UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JAS FORWARDING (USA), INC.,

                    Plaintiff,

               - against -

OWENS TRUCKMEN, INC., OWENS LOGISTICS
GROUP, LLC,

                    Defendant.
----------------------------------------------------------------x

**MEMORANDUM OF DECISION AND ORDER**
17-cv-03589 (ADS)(AYS)

**APPEARANCES:**

**Spector Rubin, P.A.**
*Attorneys for the Plaintiff*
Continental Plaza
3250 Mary Street, Suite 405
Miami, FL 33131
     By:    Andrew R. Spector, Esq., of Counsel

**George W. Wright & Associates, LLC**
*Attorneys for the Defendants*
88 Pine Street
New York, NY 10005
     By:    George W. Wright, of Counsel

**SPATT, District Judge:**

The Plaintiff JAS Forwarding (USA), Inc. (the "Plaintiff") brought this action against the Defendants Owens Truckmen, Inc. ("OTI") and Owens Logistics Group, LLC ("OLG") (collectively, the "Defendants") alleging fraudulent misrepresentation, breach of contract, and, in the alternative, breach of statutory duties under the ICC Termination Act of 1995, the Carmack Amendment, 49 U.S.C.§ 14706 *et seq.* The Plaintiff only seeks damages in the amount of $15,000.

Presently before the Court are two motions: a motion by OLG to vacate the Clerk's entry of default pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 55(c), and a motion by OTI to dismiss the fraudulent misrepresentation count pursuant to Rule 12(b)(6). For

1

the following reasons, OLG's motion to vacate the entry of default is granted, and OTI's motion to dismiss is denied.

## I. BACKGROUND

### A. The Relevant Procedural Background

On May 15, 2017, the Plaintiff filed its complaint in the Supreme Court of the State of New York, Nassau County. The complaint alleged two causes of action—for fraudulent misrepresentation, and breach of contract. In the alternative, the complaint alleged a cause of action for breach of statutory duties under the ICC Termination Act of 1995, the Carmack Amendment, 49 U.S.C. § 14706 *et seq.*

On June 14, 2017, OTI removed the action on the ground that the Court has jurisdiction over a federal question; namely, whether the Defendants violated the Carmack Amendment.

On June 19, 2017, OTI filed a motion pursuant to Rule 12(b)(6) to dismiss the Plaintiff's claim for fraudulent misrepresentation against it.

On June 28, 2017, the Plaintiff requested a certificate of default against OLG. The Clerk of the Court noted the default of OLG on the same day.

On September 21, 2017, OLG moved to vacate the Clerk's entry of default.

### B. The Relevant Facts

The following facts are drawn from the Plaintiff's complaint, and for the purposes of OTI's motion to dismiss pursuant to Rule 12(b)(6), are accepted as true.

The Plaintiff is a Georgia corporation. It is not clear from the face of the complaint in what type of business the Plaintiff engages. OTI and OLG are New York corporations. Both of the Defendants appear to engage in trucking services, and the complaint alleges that the Defendants are carriers as defined by the Carmack Amendment, or they held themselves out to be carriers.

Although the complaint does not state when, the Plaintiff retained OTI to unpack, store, and ship cargo containing mascara (the "cargo"). The complaint does not state if this was a one-time agreement, or if it was an ongoing relationship.

At some point, which is not clear from the face of the complaint, the cargo arrived in the Port of New Jersey. The complaint alleges that OTI received the cargo, and brought it to its warehouse for delivery to Howell, Michigan. Again, the complaint does not state *any* dates for these events.

The pickup order, which was sent from the Plaintiff to OTI, stated that the cargo consisted of 21 pallets. When the cargo was delivered to Michigan, "it was discovered" that three pallets were missing. The three pallets amounted to 23,328 sets of mascara. The complaint does not state when the cargo arrived, or who "discovered" that the three pallets were missing.

The complaint alleges that OTI did not make any exceptions to the quantity of cargo that it had received, nor did it notify the Plaintiff that it had received fewer pallets than the number indicated on the pickup order.

The Plaintiff's customer, who presumably ordered the missing mascara, made a claim against the Plaintiff for $21,788.35. Through a series of emails, OTI allegedly stated that they would, through insurance, reimburse the Plaintiff for the missing pallets. The Plaintiff claims that it relied on these representations from OTI when it paid the customer who made the claim against it. On February 15, 2017, which is the only date detailed in the complaint, OTI allegedly told the Plaintiff that "[w]e will have our insurance take care of it."

However, OTI apparently later stated that it never agreed to reimburse the Plaintiff.

The Plaintiff was informed, on some date, that OTI did not perform the services at issue for the Plaintiff, but that OLG had done so instead, and that OLG did not have insurance for the

3

Plaintiff's claim. The Plaintiff alleges that OTI has stated that OLG is a "motor broker only, and not a carrier, and, therefore, has no responsibility for any cargo loss." (Compl. ¶ 27). The Plaintiff states that it always communicated with OTI, and that all documents provided to the Plaintiff were submitted by "Owens Truckmen," including a certificate of liability insurance which listed Owens Truckmen as the insured.

The Plaintiff further states that OTI and OLG operate out of the same offices, and have the same officers.

## II. DISCUSSION

### A. As to OLG's Motion to Vacate the Clerk's Entry of Default

#### 1. The Legal Standard

Rule 55 states that "[t]he court may set aside an entry of default for good cause . . . ." FED. R. CIV. P. 55(c).

In deciding whether to vacate a certificate of default, a court must consider "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *United States v. Chesir*, 526 F. App'x 60, 61 (2d Cir. 2013) (quoting *SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir. 1998)); *see also State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 168 (2d Cir. 2004) (stating that these criteria "should be construed generously" in favor of party seeking relief from judgment (internal citations and quotation marks omitted)).

#### 2. Application to the Facts

Construing the above criteria generously in favor of OLG, *see State St. Bank & Trust*, 374 F.3d at 168, the Court finds that the entry of default should be vacated.

#### a. As to OLG's Willfulness

The Second Circuit has stated that willfulness is "more than merely negligent or careless" conduct, *McNulty*, 137 F.3d at 738, but will be found "where the conduct of counsel or the litigant was egregious and was not satisfactorily explained," *id.* For example, "[a] default is deemed willful where a defendant simply ignores the complaint without action." *Circuito Cerrado, Inc. v. LV Foods, Inc.*, 296 F.R.D. 122, 126 (E.D.N.Y. 2013) (internal citations and quotation marks omitted). "Thus, 'where a party is notified that he is in default and he apparently makes no effort to appear *pro se* or to explain his situation to the court, such neglect is inexcusable.'" *Arista Records, Inc. v. Musemeci*, No. 03CV4465(DGT)(RML), 2007 WL 3124545, at *4 (E.D.N.Y. Sept. 18, 2007) (quoting *Yan v. Bocar*, No. 04 Civ. 4194, 2005 WL 3005338, at *13 (S.D.N.Y. Sept. 8, 2005)), *report and recommendation adopted*, No. CIV.A. CV-03-4465(DG, 2007 WL 3145861 (E.D.N.Y. Oct. 25, 2007); *cf. Kauhsen v. Aventura Motors, Inc.*, No. 09-cv-4114, 2010 U.S. Dist. LEXIS 55554, at *13, 2010 WL 2301289 (E.D.N.Y. June 7, 2010) (noting that "[w]illfulness includes conduct that is 'not satisfactorily explained'" (internal citations and quotation marks omitted); *Domond v. Great Am. Rec., Inc.*, 116 F. Supp. 2d 368, 374 (E.D.N.Y. 2000) (Spatt, J.) (noting that "willfulness may be inferred where a party's conduct was egregious and not adequately explained"); *Frost Belt Int'l Recording Enters., Inc. v. Cold Chillin' Records*, 758 F. Supp. 131, 136 (S.D.N.Y. 1990) ("[U]tter failure to explain the default effectively precludes a finding of excusable neglect.").

Here, OLG states that after it received the summons and complaint in this action on May 25, 2017, it forwarded them to its insurance broker, who forwarded them to OLG's insurance company, Lloyd's of London. OLG states that it "expected Lloyd's to take over its defense in this

case." (Mem. in Supp. of Mot. to Vacate at 1). OLG also states that it has been engaged in settlement talks with the Plaintiff throughout the lawsuit.

Taking these facts into account, the Court finds that OLG has sufficiently explained its conduct, and that its default was not willful.

### b. As to Whether OLG Presents a Meritorious Defense

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage. 'A defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (quoting *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.,* 856 F.2d 873, 879 (7th Cir. 1988)).

OLG states that it was informed by its contractor, Prestige Logistics, who is not a party to this action, that there were pallets missing when it unloaded the container on May 18, 2016. Furthermore, OLG claims that it "does not provide actual transportation services as a carrier." Finally, OLG states that it has a defense to the breach of contract claim in that it never stated that OLG would pay the Plaintiff's claim; instead OLG represented that it would forward the Plaintiff's claim to OLG's insurer.

The Court finds that this is sufficient at this stage. Therefore, OLG has presented a meritorious defense which gives this Court some determination to make. *Am. All. Ins.* 92 F.3d at 61.

### c. As to Whether the Plaintiff Would Be Prejudiced by the Vacatur of Default

The only prejudice to which the Plaintiff can identity is the litigation of this motion and the "preparation for the entry of default judgment." First, the Plaintiff did not have to oppose this

motion. Second, the Court is constrained to find how the preparation of a two page affidavit in support of a request for an entry of default would constitute prejudice.

Furthermore, it appears that discovery has only just begun, and OLG moved to vacate the entry of default less than three months after its entry, and approximately four months after the Plaintiff initiated the lawsuit. The Court is hard pressed to find that the Plaintiff would be prejudiced by a vacatur here. *See, e.g., Chesir*, 526 F. App'x at 63 (holding that the plaintiff was prejudiced where the defendant "indisputably waited to appear in these proceedings until 42 months after service of the complaint, 26 months after the clerk entered his default, and 8 months after entry of the default judgment.").

Other than filing their motion for a default judgment, the Plaintiffs have "proceeded to litigate this case as if the default had never occurred." *Trs. of Empire State Carpenters Annuity, Apprenticeship. Labor-Mgmt. Cooperation, Pension, & Welfare Funds v. Penco United, LLC*, 13-cv-4745 (SJF)(AKT), 2015 U.S. Dist. LEXIS 15424, at *17 (E.D.N.Y. Jan. 6, 2015), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 14606 (E.D.N.Y. Feb. 5, 2015).

Also, the expense of resources alone is insufficient prejudice. The Plaintiff initiated this suit, and so clearly intended expending resources to litigate it.

Therefore, the Plaintiff would not be prejudiced by a vacatur of the default.

Accordingly, OLG's motion to vacate the clerk's entry of default is granted.

**B. As to OTI's Motion to Dismiss the Fraudulent Misrepresentation Count Pursuant to Rule 12(b)(6)**

**1. The Legal Standard**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw*

*Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

### 2. As to Whether the Carmack Amendment preempts the Plaintiff's Fraudulent Misrepresentation Claim Against OTI

OTI contends that the Carmack Amendment preempts the Plaintiff's fraudulent misrepresentation claim against OTI. In opposition, the Plaintiff contends that it is necessary to plead the two claims in the alternative because OTI has represented that it is a broker, and brokers are not covered by the Carmack Amendment. The Court finds that whether OTI is a broker is a fact intensive issue, and that the Plaintiff has properly plead the two claims in the alternative.

8

The Carmack Amendment to the Interstate Commerce Act of 1887 governs the liability of motor carriers for loss or damage to goods transported in interstate commerce. *See* 49 U.S.C. § 14706(d). "In enacting it, Congress intended to provide interstate carriers with reasonable certainty and uniformity in assessing their risks and predicting their potential liability." *Project Hope v. M/V IBN SINA,* 250 F.3d 67, 73 n.6 (2d Cir. 2001) (citing *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 381 (5th Cir. 1998); *Shao v. Link Cargo (Taiwan) Ltd.,* 986 F.2d 700, 704 (4th Cir. 1993)).

The Carmack Amendment states, in pertinent part:

> A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, [or] (B) the delivering carrier . . . . Failure to issue a receipt or bill of lading does not affect the liability of a carrier.

49 U.S.C. § 14706(a)(1).

Congress also intended, however, to "relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." *Reider v. Thompson,* 339 U.S. 113, 119, 70 S. Ct. 499, 502, 94 L. Ed. 698 (1950). Accordingly, the Carmack Amendment gives a shipper the "right to proceed against the initial carrier in a case where damage or loss occurred while the shipment was in the hands of a subsequent carrier." *Aaacon Auto Transp., Inc. v. State Farm Mut. Auto. Ins. Co.,* 537 F.2d 648, 653 (2d Cir. 1976). "Carmack effectively codified the strict liability rule that governed the liability of common carriers at common law." *Sompo Japan Ins. Co. of Am. v. Union Pac. R.R. Co.,* 456 F.3d 54, 59 (2d Cir. 2006) (internal citations omitted).

In sum, "[t]he Carmack Amendment establishes a single uniform regime for recovery by shippers directly from [the] interstate common carrier in whose care their [items] are damaged, and . . . preempt[s][the] shipper's state and common law claims against a carrier for loss or damage to goods during shipment." *Project Hope,* 250 F.3d at 73 n. 6 (internal citations and quotation marks omitted).

However, the Carmack Amendment does not impose liability on brokers. *See Olympus Dairy USA Corp. v. Pavil Assocs., Inc.*, No. 12 CV 1897 RML, 2013 WL 6493482, at *2 (E.D.N.Y. Dec. 6, 2013) ("The Carmack amendment imposes liability on carriers and freight forwarders but not on brokers, as those terms are defined by the statute, and thus it is critical to determine whether a defendant was acting as a carrier or freight forwarder, or as a broker, in relation to the particular shipment that was damaged." (quoting *Nipponkoa Ins. Co., Ltd. v. C.H. Robinson Worldwide, Inc.,* No. 09 CV 2365, 2011 WL 671747, at *3 (S.D.N.Y. Feb. 18, 2011) (internal alterations omitted)); *Active Media Servs., Inc. v. CAC Am. Cargo Corp.*, No. 08-CV-6301 ER, 2012 WL 4462031, at *3 (S.D.N.Y. Sept. 26, 2012) ("[C]ourts have repeatedly held that the Carmack Amendment does not apply to brokers." (citing, *inter alia*, *Comm. Union Ins. Co. v. Forward Air, Inc.,* 50 F.Supp..2d 255, 257 (S.D.N.Y.1999))).

Under the statute, a "broker" is "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

Because the Carmack Amendment does not apply to brokers, courts have held that Carmack's preemption of state law claims does not extend to brokers. *See Active Media Servs.*, 2012 WL 4462031, at *4 n.5; *Comm. Union Ins.*, 50 F. Supp. 2d at 261 ("[T]he Court finds that

plaintiff[']s [federal and state] common law claims may be asserted against defendant despite the fact that the Carmack Amendment does not provide for broker liability for goods lost or damaged during transport by a carrier."); *Nipponkoa Ins.*, 2011 WL 671747, at *8 n.9 ("Because this Court cannot determine as a matter of law that the Carmack Amendment is applicable here, the Court can likewise not rule as a matter of law that Plaintiff's breach of contract and breach of bailment claims are preempted by the Carmack Amendment.").

Here, OTI represented to the Plaintiff that it and OLG acted as brokers for the Plaintiff's shipment. (*See* Pl.'s Ex. A (email from the Director of Safety for Owens Truckmen stating that "Owens Truckmen did not handle this shipment, but Owens Logistics brokered it to another carrier. . . . [A]s a Broker we are not obligated to offer Cargo Insurance nor are we obligated to accept any of the liability."); Pl.'s Ex. B (email from Director of Safety for Owens Truckmen stating that "[a]s a non-vehicle owning broker we are not required to carry Cargo Insurance."); Pl.'s Ex. C (email from the insurer for Owens Truckmen stating that "[OTI] did not touch the load," implying that OTI operated as a broker)).

However, "[t]he difference between a carrier and a broker is often blurry[,] and it is apparent from the case law that the carrier/broker inquiry is inherently fact-intensive and not well suited to summary judgment." *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, No. 11 CIV. 3238 ALC GWG, 2014 WL 988569, at *4 (S.D.N.Y. Mar. 13, 2014) (quoting *Nipponkoa Ins.*, 2011 WL 671747, at *5 (internal alterations omitted)). Indeed, to determine whether a company served as a broker or a carrier, courts will consider what services were offered, and will "closely examine whether a company's statements to a shipper indicated that its actions were not limited to arranging transport, but also exert[ed] some measure of control over drivers."

11

*Nipponkoa Ins.*, 2011 WL 671747, at *5 (internal citations, quotation marks, and alterations omitted).

To that end, the Plaintiff has plead the common law causes of action and the Carmack Amendment cause of action in the alternative. This is because the Defendants allegedly held themselves out as carriers to the Plaintiff.

Rule 8 of the Federal Rules of Civil Procedure states, in pertinent part, that:

> A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.

FED. R. CIV. P. 8(e)(2); *see also Aiena v. Olsen,* 69 F.Supp.2d 521, 531 (S.D.N.Y.1999) (permitting alternative pleading for ERISA claim made in the alternative to state law claims because plaintiff not bound by alternative allegations at the motion to dismiss stage).

Given the uncertainties concerning whether the Defendants were brokers or common carriers, the Plaintiff would have placed itself in a precarious position if it had only plead either the common law claims or the Carmack Amendment claim. That is, if the Plaintiff had only alleged common law violations, the Defendants could have claimed that they were carriers and that the common law claims were preempted by the Carmack Amendment, thus requiring their dismissal. If, however, the Plaintiff had only brought the Carmack Amendment claim, the Defendants could claim that they were brokers, and that they could therefore not be held liable under the Carmack Amendment. *See, e.g., Aiena,* 69 F. Supp. 2d at 531 (allowing for alternative pleading, and stating that "given the uncertainties concerning (a) whether the J & H arrangements

were an ERISA plan and (b) the scope of ERISA preemption, it would be foolish to put all of one's eggs in either the ERISA or the state law basket").

Therefore, the Court cannot say as a matter of law at this juncture that the Carmack Amendment preempts the Plaintiff's fraudulent misrepresentation claim against OTI. The Plaintiff has sufficiently plead its state law claims and Carmack Amendment claim in the alternative. Accordingly, OTI's motion to dismiss the Plaintiff's fraudulent misrepresentation claim pursuant to Rule 12(b)(6) is denied.

### III. CONCLUSION

For the reasons stated above, OLG's motion to vacate the entry of default pursuant to Rule 55(c) is granted, and OTI's motion to dismiss the Plaintiff's fraudulent misrepresentation claim is denied. The Clerk of the Court is respectfully directed to vacate the entry of default against OLG. This case is respectfully referred to Magistrate Judge Anne Y. Shields for the completion of discovery.

**SO ORDERED**

Dated: Central Islip, New York

November 1, 2017

_____*/s/ Arthur D. Spatt*__

ARTHUR D. SPATT

United States District Judge